Good morning. My name is David Griggs. I'm here on behalf of the plaintiff and the appellant, Don Hathaway. May it please the court. Essentially what we're here for is because the judge below failed to look at the entire situation, the totality of the circumstances. What was the evidence that she should have looked at that she didn't? She failed to take into account all of the prior conduct that Mr. Dunlap, the perpetrator at issue here, committed with respect to other females in the workplace. She failed to take into account... That's the question I have. What was the evidence concerning treatment of other females that would be relevant to the hostile environment claim, other than the conduct involving plaintiffs? There was the nurse maroon, yes, your honor. Who else? There was a statement by Lt. Schultz in his interview with the Internal Affairs Unit that he had counseled Dunlap previously, and it was estimated to be approximately two years prior about his conduct with respect to women. The counsel under a hostile work environment, doesn't the victim have to know about those incidents in order for it to be considered the creation of a hostile work environment as to her? We don't believe so, your honor. What case authority are you relying upon for your position? We rely upon the proposition that it's the totality of the circumstances, and that's out of the Forklift case, Harris Forklift. But that's not an answer to the question. The question is, do you have any authority that says that incidents that are not known to the plaintiff are relevant to the determination whether it's a hostile work environment? Well, yes, I believe I do, your honor. And that is, there's the Hall case, there's two kinds of incidents that don't involve the plaintiff. Those that are known to the plaintiff and those that aren't. Those that are known to the plaintiff are clearly relevant under the prior law of this circuit. Those that aren't known to the plaintiff have been stated not to be in some cases. But here's how they are. They are because the employer knows about them. And if the employer failed to take the proper action with regard to them, the employer has ratified that conduct and thereby contributed to the discriminatory environment at the workplace. So if you've got a harasser who goes and kisses one female, and they say, well, that's not really sexual harassment, don't do it. And he goes and does it again to a different female, and neither one of them know about it. Again, you've got an isolated incident where it's probably not going to pass muster as a hostile work environment. If you just a little peck on the cheek, does it to five of them. And now you've got a guy who's going around isolating victims, and the employer knows about it, and they're not doing anything about it. That's not this case you're talking about. It is similar to this case. The perpetrator here was well-known to have conduct that was offensive and troublesome to females in the workplace. Nothing was done about it. He was called the stalker by the sergeants. So in the Hall case, each one of the parties, each one of the victims was a party to the lawsuit. And in that case, the court said it was appropriate to consider all of the victims together because all of them were parties to the action. And it's not this case. That's not exactly the same as this case, I agree. But what we have here is, and I'm looking at a slightly different analysis, not that it's directly relevant to the victim's state of mind and how that impacts her subjectively or objectively, whether it's harassment, but whether the employer is allowing an atmosphere that condones this sort of conduct and thereby ratifies it. Only after you've established that there was both objective and subjective hostile work environment, then the question becomes whether the employer dealt with it. Well I believe I can establish that even without using the evidence of the prior incidents which Ms. Hathaway didn't know about as evidence of her hostile work environment. She knew about the Nurse Maroon incident, which was the most recent one prior to her. That was just about, I think it was about six weeks prior to Ms. Hathaway's incident. That was an incident that's well documented in the record. And there's also, in the documentation regarding that incident, statements to the effect that Dunlop just doesn't get it. You gotta tell him. You gotta beat it into him. He doesn't get it. And all they did was say, don't do it. They knew that they were dealing with a guy who did not follow this direction. And if you look at some of the things that happened after this incident, he still didn't, even after it. So the employer allowed this guy basically to have free reign and that's what led to this incident regarding Ms. Hathaway. So they can be held liable for that, for basically allowing this environment to develop and continue. Do you have anything to say about the subjective prong of the foster work environment? I don't. I know there's an argument to the effect that she was not subjectively offended by this conduct. I think she stated she was. I think, you know, the issue here is, this is a summary judgment. She was offended? She was offended. Is that enough to make a case? Based upon the subjective prong? Yes. Yes, provided that it was due to her gender and that it was offensive. Yeah. So we have, it's important to remember here that we're dealing with an environment where these workers are in a dangerous environment every day. They're dealing with prisoners. They're supposed to look out for each other. They're supposed to be able to trust each other. They're supposed to know that their fellow prison guard is making sure they're safe and instead of, you know, worrying about them romantically. And so this is the context in which all this happened. The judge did not consider that either. You have to look at the totality of the circumstances. You have to look at it from the victim's perspective. And here, what happened was, even that one single incident was extremely physically threatening, humiliating, and very bad, especially in this environment. You got two locked doors that are in a jail where no one can get through. They're in between these two. It's the pass-through area. Ms. Hathaway is pinned against the wall. Her arms are restrained. And Mr. Dunlap attempted to kiss her. This is just a few weeks after he was told not to engage in inappropriate behavior with the female co-workers. But he was disciplined for that. He was not disciplined. He was not disciplined for when he tried to kiss Ms. Hathaway? Oh, Ms. Hathaway, for that, yes. I thought Your Honor was referring to the Nurse Maroon incident. He was disciplined, but that discipline, too, was inadequate. He was, in fact, the Internal Affairs Unit recommended he be terminated. You look at their report. They said, this is bad stuff. He's got to go. What's your definition of inadequate discipline? It didn't prevent future occurrences. It did not, it was not reasonably calculated to end Mr. Dunlap's behavior towards women in the workplace. It didn't. There were subsequent incidents. There were subsequent events that are in the record? Yes, Your Honor. They're in the record. Look at the affidavit of Deputy Lucky. Where is that in the record? Let me pull that up. Are you talking about the smirking incident? No, that was with respect to Ms. Hathaway. He did, after the summary judgment decision came down, and that was after that, he did continue to stalk her and smirk towards Ms. Hathaway. Let me ask you this. In terms of cessation of the activity, is it in the entire workplace, or is it toward the particular victim? The discipline is supposed to stop the conduct toward the victim. It should stop it towards all women, I would hope. What's your case authority? We're looking at it from the legal requirements. Right. In an ideal world, perhaps, it should stop it altogether, but we're focused on the law as it pertains to this particular case. So what does the law say regarding the punishment? Is it supposed to stop the harassing activity vis-a-vis the victim or vis-a-vis the entire world? I think it's supposed to stop it vis-a-vis victims that would be the same type of victims as the plaintiff. This particular victim or victims in general? In general. What's your case authority for that? In Ellison, it says Title VII is aimed at the consequences of an employment practice. I'm asking you a specific question. I don't have a specific answer at this moment, Your Honor. I'd be happy to supplement with a further brief if Your Honor would like that. That would be necessary. But the statute is designed to stop this stuff. It's not just designed to stop it for the plaintiff, but it's designed to stop it for women. Do you have a specific case authority that addresses discipline? I will look for that. I would like to not scratch that. The affidavit of Judith Luckey is at 136 in the record. And the affidavit talks about Sergeant Dunlap stating that he talks about the incident with Hathaway. He asked Luckey if she would like for him to do the same thing he did to Hathaway. He says to Luckey, they can't get me anymore. They've already punished me. And also on 141, there's an e-mail from Judy Luckey to a major attorney talking about another incident that Mr. Dunlap engaged in with regard to another individual, Deputy Palmazzi. And that goes into detail about what he did with her and he groped her. And she later denied it because she apparently didn't want to get him in trouble. But there were subsequent incidents and that's all in the affidavit of Judy Luckey. I'd like to reserve the remaining time for rebuttal unless there are any further questions. Thank you, counsel. Thank you. Good morning. May it please the court, Jacqueline Weber appearing on behalf of Multnomah County Sheriff's Department. Could you speak up, counsel, please? Yes, I apologize. Jacqueline Weber appearing on behalf of Multnomah County Sheriff's Department. The primary focus in this case is what did the defendant, who is the employer, not Mr. Dunlap, but the employer, what did the defendant know and what did the defendant do? Those are the most appropriate and the primary focuses for the court in this case. You're assuming that there was a hostile work environment. You skipped the first three steps. Well, yes. For purposes of the argument. Yes. For purposes of the argument, in order to survive summary judgment, the plaintiff does have to show at least a prima facie case of a hostile work environment. In order to do that, she has to show that both objectively and subjectively there was a work environment that was perceived as and was abusive toward women based upon sexual harassment. That has not occurred in this case. There was not sufficient evidence to even meet that prima facie standard. What about opposing counsel's argument that at least she knew about the incident with the nurse? Well, the incident with the nurse is something that she heard about apparently second or third hand from the record. It doesn't matter, does it? Well, what matters in that case is what the incident with Nurse Maroon was. And the incident with Nurse Maroon was not characterized by Nurse Maroon or the person who complained about the conduct or the department as sexual harassment. The Nurse Maroon incident involved Deputy Dunlap essentially spending too much time hanging around Nurse Maroon. There was evidence that he had reached out and touched her hair or her shoulder or her hand, which was observed by one of her supervisors. That supervisor was annoyed by his conduct, which she considered to be interfering with the work that she was trying to get done in her medical unit. And so she complained to Mr. Dunlap's sergeant, saying, this guy's hanging around too much. I don't want him hanging around my nurses. They have work to do. And that complaint was then dealt with, and it was dealt with appropriately. He was called to task. He was told, you know, you have a job to do, they have a job to do. Make sure you do your job. But there was no element of sexual harassment. And in that case, Nurse Maroon was not the complainant. And she herself stated that, and I can find it in the record if you'd wish, that she didn't consider his activities to be sexual harassment. She did say that he made her a tad uncomfortable, but she didn't consider that she was being sexually harassed by Deputy Dunlap. So that instance is not sufficient to meet the objective or the subjective element of an abusive work environment for the plaintiff in this case. There has to be some evidence in that regard that the conditions of the plaintiff's employment have been altered in some way. Even if you take into account the prior conduct between Deputy Dunlap and the plaintiff, there is no evidence that it altered her work environment in any way. And again, you need to remember that the focus here is on the employer. Only the employer can alter the terms and conditions of the employment. But that's not true. If a supervisor or a co-worker makes the working environment so unpleasant that it's intolerable, then the conditions have been altered despite any lack of action by the employer. But the employer has to have some knowledge of it. And I do agree with Your Honor that there are actions that can be so egregious that they will alter the terms and conditions of someone's employment. If it's a supervisor, it's imputed to the employer. That's correct. In this case, however, it's not a supervisor, it's a co-worker. You made a blanket statement that the employer had to alter the terms and conditions. Well, you're right. I did make that statement. And in saying that, I apologize. I was assuming that a supervisor is imputed to be the employer in such a situation. So, of course, a supervisor can alter the terms and conditions of employment by a single act, and maybe even not as egregious a single act. But in this case, that's not this case, no. Now, he had been, what, I guess he had been counseled on several occasions prior to this incident with Ms. Hathaway? He had been counseled on prior occasions to restrict his, Deputy Dunlap, if he was guilty of anything, he invaded co-workers' personal space. He got too close to them, male and female. He didn't seem to understand the boundaries of professionalism in the workplace in terms of what kind of personal conversations you have with your co-workers and when it is appropriate or not appropriate to reach out and touch them. So, yes, he had been counseled on one occasion regarding the Nurse Maroon incident, which that was a, you know, you're going beyond your professional boundaries by hanging around Nurse Maroon and talking to her and keeping her from doing her work and keeping yourself from doing your work. And he was also counseled as counsel indicated by, I believe it's Sergeant Johnson, excuse me while I find that, who counseled him regarding Dunlap's conduct toward Sergeant Johnson, slapped him on the back, put his arm around him, and Johnson said, you know, whoa, you don't get to touch me unless I invite that touching and I don't invite that touching, so don't touch me. And there's no evidence in the record that this plaintiff knew about that counseling or that it affected her in any way at the time of the incident between she and Dunlap on October 31st of 2001. There was also counseling of Dunlap regarding a complaint from a corrections nurse that he had been rude to her and a co-worker. Dunlap had been rude and he was counseled not to be rude. But none of those complaints nor those counseling incidents involved any type of sexual harassment or even an allegation of sexual harassment. So what we really have in this case is an isolated incident. We have one incident and the county is not pretending to say that it wasn't sexual harassment or a sexually charged act and that it wasn't offensive. It was both of those things and it was highly, highly inappropriate. However, once that incident occurred, it was immediately reported and it was immediately dealt with. The corrections deputy, Dunlap, was immediately put on administrative leave and removed from the workplace and ultimately following the investigation was disciplined with 30 days suspension without pay. What about opposing counsel's argument that the discipline imposed was inadequate? There is absolutely no case law to support the assertion by counsel in their briefs that the only discipline that's adequate is termination. What the case law says is that the discipline has to be reasonably calculated to stop the harassing behavior toward the plaintiff. And in fact, that is what occurred in this case. Affidavits were submitted at the trial court level regarding subsequent actions of Deputy Dunlap towards other individuals in the workplace. But those are not relevant to whether or not he stopped his harassing behavior toward this plaintiff, this victim, and he did. A 30 day suspension is reasonably calculated to say, hey, you can't do this, don't ever do it again. And the Title VII is not a law that is intended to be punitive, but it is intended to stop inappropriate behavior. Does it matter that the employer staggered the discipline in order to ease the burden on Officer Dunlap? I would argue that it does not matter because the discipline was still imposed. It was the strongest discipline short of termination that can be imposed in the Sheriff's Office, or at least that was true at that time and I believe it's still true. And so yes, a very, very strong message was sent to Deputy Dunlap that his behavior toward the plaintiff was inappropriate and would not be tolerated at all. How much time to last between the imposition of the discipline and the filing of this lawsuit? I don't know the answer to that, Your Honor, I'm sorry. Was there a period of time after the imposition of discipline when Dunlap returned to work before the lawsuit was filed? Again, I'm sorry, I believe the lawsuit was filed almost immediately, but I can't answer your question for certainty, no, I'm sorry. Did you want to address the state law claim? I believe that the state law claim, as stated in my brief, is dependent on the decision on the federal law claim that the state law, excuse me, if you're referring to the battery, I'm sorry, I'm sorry. the job that they were expected to do or that the battery was committed in furtherance of the employer's interest, and there's absolutely no evidence in this case that it was expected of this employee or that it was motivated by anything but personal interest on the part of the employee who committed it. And therefore, there is absolutely no basis for liability on the part of the employer for the battery, the state law claim. All right, thank you. Thank you. As a matter of information, the district court opinion says the incident happened on November 1, 2001, and the district court case has a 0-2 filing number, which would tell me it was filed within 13 months of the incident. Thank you. Yeah, I believe that's correct. Thank you, counsel. Is that all? The filing date, I believe, was June 5, 2002. I don't know whether that was if Dunlop had completed all of the suspension at that point in time or not. I believe he did it in five-day chunks over a period of three or four months. But so far as the record shows, there's no indication that there were further acts of harassment after the imposition of discipline. With respect to the plaintiff? I said no further acts of harassment, period. Well, there's the affidavit. I would refer you back to the affidavit of Judy Luckey, Your Honor. That was in, I believe it was September of 2002, with the incident she's talking about there. I want to follow up on Your Honor's question about what does the punishment have to do? Does it just have to stop it for the plaintiff, or does it really have to be designed to prevent future harassment in the workplace? And it's the latter. If you look at Nichols, which is an opinion out of this court, and also it's citing Ellison, which is Ellison v. Brady. In Ellison it says employers should impose sufficient penalties to assure a workplace free from sexual harassment. It doesn't say to stop it against the plaintiff. It says to assure a workplace free of sexual harassment. I think that means that it's designed to prevent it from happening in the future. And, indeed, in Nichols it says that part of the reasonableness of an employer's remedy for sexual harassment depends on the employer's ability to stop the harassment by the person who engaged in the harassment. That's one. And it doesn't say against the plaintiff. And, two, to persuade potential harassers to refrain from unlawful conduct. So it's much broader than just stopping the harassment against the particular plaintiff. As it should be, it's designed to stop this sort of conduct in the workplace. And that's what the statute was designed to do, and that's what the courts have decided. So in this case, what is your position as to what would have been adequate? I take it you're arguing that the punishment or the discipline was not adequate. It was not. Okay. What would have been adequate? Termination would have been adequate. So you think that termination essentially is required when there's an incident such as this? We believe in this case termination was the only remedy which would have prevented this particular individual from engaging in this kind of conduct against employees of this organization. And that's about as far as they can reach, I believe. As to the incident with Nurse Maroon, I believe counsel said that it wasn't sexual harassment, but I would refer, Your Honors, to the record at 76, which is the actual report of that incident, which was done by Sergeant Prigge. And it says at the very top, information report in the first box, incident, sexual harassment. They called it sexual harassment. They considered it sexual harassment. They wrote up a report about sexual harassment. It was sexual harassment. Now, Nurse Maroon was a very timid individual. She had to be coaxed into talking about it by one of the other nurses because she was very shy and very nervous about talking about these things. But she was clearly, if you look at this report and if you look at Glenda Baxter's deposition transcript, that describes some of the incidents that Dunlap engaged in. With regard to Nurse Maroon, she tried to shield herself from him and covered herself up with her arms and bent over. It was a sexual harassment incident. And Dunlap's conduct did alter the work environment. After the incident, and there have been different versions of what date it was, whether it was October 31 or November 1, just for the record, that's because it's a graveyard shift. It started out on the 31st and it carried over into the 1st of November. But she had difficulty sleeping. She did go to counseling. She talked about how it caused her to be very concerned in this very high stress and dangerous environment for her own safety. So I believe there's no doubt about the fact that she altered the work environment. There's certainly enough evidence to get to a jury on that. At this point, I don't have anything further unless there are any further questions. It appears there are not. Thank you to both counsel. The case just argued is submitted for decision by the court. Thank you. The final case on calendar for argument is Oregon Natural Resources Council versus American Forest Resource Council. Thank you.
judges: T.G. Nelson, Rawlinson, Pollak